# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PETER BOURNE, | ) | |
| | ) | Civil Action File No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CITY OF DECATUR, GEORGIA | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Peter Bourne ("Plaintiff" or "Mr. Bourne") files this Complaint for Equitable Relief and Damages against City of Decatur, Georgia ("City of Decatur" or "Defendant") showing the Court the following:

### INTRODUCTION

1.     This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.*, to correct unlawful employment practices based on disability, to vindicate Plaintiff Bourne's rights, and to make him whole.  Mr. Bourne seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, and attorney's fees, and costs of litigation.

2.     Mr. Bourne brings this action because, despite his good performance history, the City of Decatur placed him on administrative leave and terminated him because: (1) Mr. Bourne had an actual impairment, a record of actual impairment, or the City of Decatur regarded him as having an impairment; (2) he has an impairment that actually and substantially limits him in one or more major life activities for which he requested a reasonable accommodation; and (3) City of Decatur engaged in prohibited medical inquiries with respect to Mr. Bourne's disability in violation of the ADA.  Mr. Bourne also brings a claim for retaliation in violation of the ADA based on the protected conduct of requesting an accommodation and filing a charge of discrimination under the ADA.

**Jurisdiction and Venue**

3.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.     Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant City of Decatur conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## Exhaustion of Administrative Remedies

5.     On August 30, 2017, Mr. Bourne filed a Charge of Discrimination –

Charge No. 410-2017-05901 – with the Equal Employment Opportunity

Commission within 180 days of the occurrence of the acts of which he complains.

6.     On January 23, 2018, Mr. Bourne amended his Charge after the City of

Decatur notified him that it was terminating his employment.

7.     Mr. Bourne received a Notice of Right to Sue dated August 27, 2018.

8.     Mr. Bourne brings this action within ninety (90) days of the receipt of

his Notice of Right to Sue.

## The Parties

9.     Mr. Bourne is a citizen of the United States and a resident of the State

of Georgia.  Mr. Bourne submits himself to the jurisdiction of this Court.

10.     Mr. Bourne is and, at all times relevant hereto, was an individual with

a disability as that term is defined by 42 U.S.C. § 12102(1).

11.     Mr. Bourne is a person with a disability because he has actual mental

impairments – Anxiety Disorder, Shift Work Sleep Disorder, Obsessive-Compulsive

Disorder, and persistent depressive disorder – causing substantial limitations in one

or more major life activities, because he has a record of impairment, and because the

City of Decatur regarded him as having an impairment.

12.     Mr. Bourne is capable of performing the essential functions of his job with an accommodation.

13.     Defendant City of Decatur is a municipality, i.e., a consolidated government entity and municipal corporation sited in Dekalb County, Georgia, organized under the laws of the State of Georgia and has employed more than fifteen (15) persons for each working day in each of the 20 calendar weeks in the current or preceding calendar year.

14.     The City of Decatur is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby and was the public employer of Mr. Bourne.

15.     The City of Decatur is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

16.     The City of Decatur may be served with process pursuant to Rule 4 of the Federal Rules of Civil Procedures by service on its City Manager, Peggy Merriss, at

509 N. McDonough Street, Decatur, Georgia 30030.

## **Statement of Facts**

17.    Mr. Bourne began employment with the City of Decatur Police Department as a Patrol Officer in 2012.

18.    In mid-August 2016, Mr. Bourne was admitted to Ridgeview Hospital due to an incident stemming from his disabilities.

19.    While Mr. Bourne was in the hospital, his wife contacted the City of Decatur to inform them that Mr. Bourne would not be able to make it into work because he was hospitalized.

20.    While Mr. Bourne was in the hospital, he was diagnosed with Anxiety disorder, persistent depressive disorder, and Obsessive-Compulsive Disorder by a psychiatrist.

21.    Mr. Bourne remained in the hospital for one week and took an additional week off for a total of 2 weeks of medical leave.

22.    Mr. Bourne returned to work in the first week of September 2017 and was scheduled for the night shift.

23.    Mr. Bourne was unable to stay awake through the night shift due to the side effects of the medication he was taking for his disability.

24.     The shift supervisor, Sgt. John Bender, told Mr. Bourne to go home and see Chief Mike Booker the next day and ask to be moved to day shift.

25.     The next day, Mr. Bourne emailed Chief Booker to request a meeting.

26.     Mr. Bourne met with Chief Booker and told Chief Booker that he had been in the hospital and was taking medication for his anxiety that was making it difficult for him to stay awake overnight.

27.     During his meeting with Chief Booker, Mr. Bourne requested a reasonable accommodation of a temporary switch to the day shift.

28.     Chief Booker asked Mr. Bourne to bring him a doctor's note stating that Mr. Bourne was unable to work night shift and asked Mr. Bourne to get a physical performed by his personal doctor that stated he was physically fit for duty.

29.     Later that day, Captain Mike Matics contacted Mr. Bourne and told him that he was on administrative leave until further notice and asked that Mr. Bourne bring the doctor's notes to him once Mr. Bourne obtained them.

30.     Mr. Bourne subsequently obtained the doctor's notes and brought them to Captain Matics.

31.     Captain Matics stated that the doctor's note regarding the night shift was not specific enough and asked for a note that contained an approximate duration

of the requested accommodation of a temporary switch to day shift.

32.     Mr. Bourne obtained a note from his psychiatrist that stated he would need to be on day shift for three months, and Mr. Bourne provided this note to Captain Matics.

33.     Mr. Bourne remained on administrative leave even after he provided this doctor's note.

34.     While on leave, Mr. Bourne was not allowed to participate in training classes or take the promotional exam he signed up for prior to being placed on leave.

35.     Mr. Bourne sent an email to Chief Booker stating he would not be taking the promotional exam as a formality because he did not want to be marked as a no-show.

36.     Sgt. Dan Bellis contacted Mr. Bourne while Mr. Bourne was on leave to notify Mr. Bourne that his 4-year recertification was coming up and that the administration at the City of Decatur Police Department refused to schedule this recertification.

37.     In Fall 2016, Mr. Bourne received a phone call from Dr. Lydia Canty, a psychologist, who told Mr. Bourne that he was required to come to see her for a psychological evaluation.

38.     Mr. Bourne saw Dr. Canty twice, and Dr. Canty cleared him to return to work.

39.     Captain Matics contacted Mr. Bourne in December 2016 to tell Mr. Bourne to return to work.

40.     When Mr. Bourne returned to work in December 2016 he was placed on light-duty because his certification expired while he was on administrative leave.

41.     Defendant paid all of Mr. Bourne's recertification costs and late fees, but if Mr. Bourne needs a waiver in the future the monetary penalties will increase.

42.     Mr. Bourne completed his recertification requirements in late January 2017.

43.     At the end of March 2017, Mr. Bourne attended a two-week instructor training course.

44.     During the training class, Mr. Bourne was not able to sleep enough, only sleeping thirty minutes one night and three hours the next.

45.     This lack of sleep caused Mr. Bourne to have a medical emergency in class in which he had trouble speaking, stuttered, and could not get his hands to stop shaking or fingers to stop moving.

46.     Mr. Bourne left class after this medical emergency and saw multiple

doctors.

47.     The doctors did not agree as to what caused the incident, stating it was likely a Transient Ischemic Attack or a complex migraine, and not necessarily related to his disability.

48.     The next day, Mr. Bourne left the hospital and notified City of Decatur of the same.

49.     Captain Matics told Mr. Bourne to take the rest of the week off.

50.     City of Decatur's personnel director, Connie Jacobs, subsequently contacted Mr. Bourne to tell him that he would be receiving a note from her the following week.

51.     When Mr. Bourne received the letter, it was not postmarked, and it was taped to his front door.

52.     The letter contained sensitive and personal medical information and stated that City of Decatur believed Mr. Bourne was unable to handle the stress of the job and was therefore a potential threat to the public because he drove a city vehicle and carried a firearm.

53.     The letter also contained multiple falsities, including that Mr. Bourne had an "episode" while he was working the day shift, pursuant to his

accommodation.

54.    Mr. Bourne was never granted an accommodation and the "episode" could not have happened because he was out on administrative leave, not working the day shift.

55.    There is nothing in Mr. Bourne's work record to suggest that he is unable to safely handle a firearm or drive a vehicle as Mr. Bourne has never been involved in a single traffic accident at work and has never received a complaint regarding the use of his weapon.

56.    The note also stated Mr. Bourne could not return to work until he received clearance from Dr. Mark Ackerman, who was not a medical doctor but a psychologist.

57.    After receiving the note, Mr. Bourne was put on unpaid leave and stayed on unpaid leave for approximately a month.

58.    Mr. Bourne was forced to use accrued medical leave to receive a paycheck.

59.    Mr. Bourne was evaluated by Dr. Ackerman as requested by City of Decatur.

60.    Dr. Ackerman expressed confusion as to why Mr. Bourne had been sent

to him instead of to a medical doctor for clearance.

61. Dr. Ackerman required Mr. Bourne to give him his personal psychiatric and counseling records to release him to return to work.

62. After visiting with Mr. Bourne a second time, Dr. Ackerman released Mr. Bourne to return to work.

63. City of Decatur did not contact Mr. Bourne and allow him to return to work for multiple weeks.

64. Captain Matics called Mr. Bourne and told him to return to work in early May 2017.

65. Sgt. Bender told Mr. Bourne that he told other supervisors that Mr. Bourne would be returning to work for range day as part of firearms qualification.

66. Mr. Bourne was later told by Sgt. Bender that Sgt. Bender heard from one of the chiefs that there had been a sudden change of plans and Mr. Bourne would not be returning to work for range day.

67. Ms. Jacobs called Mr. Bourne later that day and told him that the City of Decatur needed some clarification from Dr. Ackerman before Mr. Bourne could return to work.

68. When Mr. Bourne finally returned to work, he was restricted to working

day shift only even though he no longer required a day shift accommodation.

69.    This restriction caused Mr. Bourne to miss multiple overtime opportunities.

70.    Around the end of May 2017, Mr. Bourne became sick while at work with some sort of stomach illness that did not interfere with his ability to do his work.

71.    After Mr. Bourne completed his shift, Sgt. Bender told him that he looked sick and offered him a ride home.

72.    Sgt. Bender advised Mr. Bourne to stay home the next day, but Mr. Bourne said he would be fine to come in.

73.    Nonetheless, Sgt. Bender prevented Mr. Bourne from coming to work the next day.

74.    The day after Mr. Bourne stayed home, Captain Matics contacted Mr. Bourne and told him to come to his office on Mr. Bourne's off-day to meet.

75.    During the meeting, Captain Matics asked Mr. Bourne why he was sick and asked if the sickness was related to his medical conditions.

76.    Captain Matics stated that the Department could no longer rely on Mr. Bourne to come to work and perform his duties.

77.    Mr. Bourne told Captain Matics that Sgt. Bender required him to stay

home.

78.    At the next shift rotation, Mr. Bourne was not permitted to move to night shift with his team and was kept on day shift with a new team, including a new supervisor, Sgt. Brandon Zachery.

79.    In July 2017, Mr. Bourne had lunch with Officer Mark Hensel and told him that he was considering taking legal action against City of Decatur.

80.    Toward the end of July 2017, Mr. Bourne was eating breakfast with Officer Johnson when Officer Johnson told Mr. Bourne that "They made it sound like you were suicidal the other day."

81.    When Mr. Bourne asked Officer Johnson what he meant, Officer Johnson stated that Lt. Tim Karolyi said he "sure hoped" Mr. Bourne would not be able to make it back for range day and made other comments that lead Officer Johnson to believe Mr. Bourne was suicidal.

82.    Around early August 2017, Mr. Bourne was called into Captain Kris Boyett's office.

83.    Captain Boyett informed Mr. Bourne that she opened an internal affairs investigation based on a year-old complaint by a trainee who did not pass FTO training providing a picture of Mr. Bourne asleep in the passenger seat of the patrol

vehicle.

84.     During the meeting, Captain Boyett pressed Mr. Bourne about his medical history and spent most of the interview questioning Mr. Bourne about his disability.

85.     A few days later, Captain Boyett called Mr. Bourne back into her office about the investigation and let Mr. Bourne know about a subsequent investigation relating to a search of a vehicle that occurred on July 16, 2017.

86.     The second investigation was based on trumped up charges for which non-disabled officers are not investigated or disciplined.

87.     Within a week, Captain Boyett called Mr. Bourne and asked him to come in the next day for an interrogation related to the second investigation.

88.     Mr. Bourne asked for an extension because his witness, an attorney, needed more time to plan to get to the Police Department.

89.     Captain Boyett did not want to grant this extension, but Mr. Bourne pointed to the policy which allowed him to have a witness if it did not unreasonably prolong the investigation.

90.     Captain Boyett then said she would call Deputy Chief Scott Richards.

91.     Shortly thereafter, Captain Boyett called Mr. Bourne back and said that

the interrogation could be delayed and that he could bring his attorney to the interrogation.

92.     Mr. Bourne asked for copies of the relevant polices before his interview, but Captain Boyett would not provide them.

93.     During the investigation, Mr. Bourne shared with Internal Affairs that his supervisor, Sgt. Zachery, instigated the search Mr. Bourne was being investigated for and that Sgt. Zachery changed a report that Mr. Bourne had written to cover up what happened in the search.

94.     Sgt. Zachery, who is not disabled, was not placed on administrative leave.

95.     On December 27, 2017, Mr. Bourne was notified that he was being terminated and was terminated effective January 23, 2017.

96.     Neither Sgt. Zachery or multiple other non-disabled officers who had engaged in the same or similar misconduct that Mr. Bourne was alleged to have engaged in were investigated, placed on administrative leave, or terminated.

97.     City of Decatur acted willfully in all the above-stated discriminatory and retaliatory actions against Mr. Bourne, violating his federally protected rights.

98.     Additionally, and in the alternative, City of Decatur acted with reckless

disregard for Mr. Bourne and his federally protected rights.

99.    The effect of City of Decatur's above-stated actions has been to deprive Mr. Bourne of employment opportunities, income in the form of regular wages, overtime pay, prospective employment benefits, and other benefits to which he would have been entitled but for City of Decatur's illegal actions.

100.    The effect of City of Decatur's above-stated actions has also caused Mr. Bourne to suffer out-of-pocket losses and mental and emotional distress for which he seeks redress.

## COUNT I:  Violation of ADA – Regarded as Disabled

101.    Mr. Bourne incorporates by reference all the preceding paragraphs of the Complaint.

102.    At all times relevant hereto, City of Decatur has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

103.    At all times relevant hereto, Mr. Bourne was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102 (1)(C) because City of Decatur regarded him as a person with an impairment as defined by the Act.

104.    Moreover, at all times relevant hereto, Mr. Bourne has been a qualified

individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job.

105.   City of Decatur, among other things, placed Mr. Bourne on administrative leave, prevented him from attending a firearms training, subjected him to psychological testing, and terminated him because it regarded him as disabled.

106.   City of Decatur's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

107.   As a direct and proximate result of City of Decatur's intentional discrimination, Mr. Bourne has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

108.   City of Decatur's actions have caused and continue to cause Mr. Bourne to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT II:  Violation of the ADA:  Discrimination/Failure to Accommodate

109.   Mr. Bourne incorporates by reference all the preceding paragraphs of

the Complaint.

110. At all times relevant hereto, City of Decatur has been subject to the requirements of Title I of the ADA, as amended.

111. At all times relevant hereto, Mr. Bourne was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

112. City of Decatur was aware of Mr. Bourne's disabilities and history and record of disability.

113. At all times relevant hereto, Mr. Bourne has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job.

114. Mr. Bourne's disabilities substantially limited one or more major life activities.

115. Mr. Bourne requested accommodation from the City of Decatur relating to his disabilities: a temporary switch from the night shift to the day shift.

116. The City of Decatur refused to grant Mr. Bourne's requested accommodation, repeatedly placed him on administrative leave, prevented him from attending firearms training, and terminated his employment because of his disability.

117. City of Decatur's actions amount to a violation of Section 102 of the

ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

118.   As a direct and proximate result of City of Decatur's intentional discrimination, Mr. Bourne has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

119.   City of Decatur's actions have caused, continue to cause, and will cause the Mr. Bourne to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

### COUNT III: Violation of the ADA – Prohibited Medical Inquiries

120.   Mr. Bourne incorporates by reference all the preceding paragraphs of the Complaint.

121.   42 U.S.C.A. § 12112(d)(4)(A) prohibits medical examinations and forbids employers from inquiring "as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

122.   City of Decatur regularly forced Mr. Bourne to submit to fit-for-duty examinations that were not job-related or consistent with business necessity.

123.   In March 2017, after Mr. Bourne suffered a medical incident in a training class, City of Decatur forced Mr. Bourne on extended unpaid administrative leave and required Mr. Bourne to be evaluated by a psychologist in violation of 42 U.S.C. § 12112(d)(4).

124.   City of Decatur improperly used Mr. Bourne's medical information and did not make a reasonably informed and considered decision before requiring psychiatric evaluation.

125.   As a direct and proximate result of City of Decatur's violations of the ADA, Mr. Bourne has suffered damages as set forth in the prayer for relief below, for which City of Decatur is liable.

## COUNT IV:  Retaliation in Violation of the ADA

126.   Mr. Bourne incorporates by reference all the preceding paragraphs of the Complaint.

127.   At all times relevant hereto, the City of Decatur has been subject to the requirements of Title I of the ADA.

128.   At all times relevant hereto, Mr. Bourne was an individual with a

disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

129. In September 2016, Mr. Bourne engaged in protected activity under the ADA when he asked for an accommodation of a temporary switch to day shift due to his covered disability.

130. The City of Decatur refused to grant Mr. Bourne's request for accommodation and placed him on administrative leave in retaliation for requesting an accommodation in violation of the ADA.

131. After City of Decatur forced Mr. Bourne on administrative leave and forced Mr. Bourne to submit to psychiatric evaluation in April 2017, Mr. Bourne filed a charge of discrimination with the EEOC on August 30, 2017.

132. After Mr. Bourne filed his Charge of Discrimination, the City of Decatur forced him to remain on leave and ultimately terminated his employment.

133. The City of Decatur's actions in retaliating against Mr. Bourne following his requests for a reasonable accommodation and filing a Charge of Discrimination were committed with reckless disregard for his right to be free from retaliatory treatment because of his opposition to discriminatory practices in violation of the ADA.

134. The effect of the City of Decatur's above-mentioned conduct has been

to deprive Mr. Bourne of equal employment opportunities and benefits due to him because of his willingness to oppose such discriminatory practices.

135.   The actions taken against Mr. Bourne by the City of Decatur have caused him to suffer both monetary and non-monetary damages.

136.   Accordingly, Mr. Bourne is entitled to the equitable and monetary relief set forth in the following prayer for relief for the City of Decatur's violation of his rights under the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

(a)   Issue a declaratory judgment that the City of Decatur's acts, policies, practices, and procedures complained of herein violated Mr. Bourne's rights as secured under the ADA;

(b)   Grant Mr. Bourne a permanent injunction enjoining the City of Decatur, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Mr. Bourne and others similarly situated because of the exercise of their rights under the ADA or because of

his participation in this lawsuit;

(c)     Grant to Mr. Bourne judgment in his favor and against the City of Decatur under all counts of this Complaint;

(d)     Order the City of Decatur to make Mr. Bourne whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost because of the City of Decatur's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(e)     Order that Mr. Bourne be reinstated or, in the alternative, be awarded front pay;

(f)     Order the City of Decatur to compensate Mr. Bourne for mental and emotional damages suffered because of the City of Decatur's unlawful and discriminatory acts;

(g)     Grant to Mr. Bourne a jury trial on all issues so triable;

(h)     Grant to Mr. Bourne his reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by 42 U.S.C. § 12117(a) (as amended); and

(i)     Grant such additional monetary and equitable relief as the Court

deems proper and just.

Respectfully submitted,

**LEGARE, ATTWOOD & WOLFE, LLC**

s/ Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Tel: (470) 823-4000 | Fax: (470) 201-1212

Counsel for Plaintiff